UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAHMAT BEGUM,

       Plaintiff,

                                     Case No. 08-10707

v.

                                     Honorable Patrick J. Duggan

DEPARTMENT OF HOMELAND
SECURITY (DHS),

       Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on July 9, 2008.

PRESENT:      THE HONORABLE PATRICK J. DUGGAN
                      U.S. DISTRICT COURT JUDGE

On February 20, 2008, Rahmat Begum ("Plaintiff") initiated this action against the

United States Department of Homeland Security ("Defendant") after the United States

Citizenship and Immigration Services ("CIS"), a component of Defendant, denied her

application for an adjustment of status ("application" or "Form I-485") to that of a lawful

permanent resident. Presently before this Court is Defendant's motion to dismiss for lack

of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil

Procedure. Defendant's motion has been fully briefed. On July 8, 2008, this Court sent

the parties a notice stating that the Court is dispensing with oral argument on Defendant's

motion. *See* E.D. Mich. LR 7.1(e)(2).

# I.    <u>Factual Background</u>

Plaintiff is a Pakistani citizen who has resided continuously in the United States since January 31, 1986.  (Compl. ¶ 1.)  On August 24, 2001, Plaintiff filed her application requesting that Defendant adjust her status to that of a permanent legal resident based on her then-husband Syed M. Hussaini's ("Hussaini") eligibility for adjustment of status under the Legal Immigration Family Equity Act of 2000 ("LIFE Act"), Pub. L. 106-553, 114 Stat. 2762 (2000), *amended by* LIFE Act Amendments, Pub. L. 106-554, 114 Stat. 2763 (2000)(hereinafter referred to collectively as the "LIFE Act and its Amendments"). (*Id.* ¶ 8.)  As a class member under the LIFE Act, Hussaini was permitted to file an application for adjustment of status under 8 U.S.C. § 1255a.  Plaintiff and Hussaini were divorced on April 23, 2003.  Thereafter, on August 26, 2003, Plaintiff appeared for an interview regarding her application.

In November 2004, CIS sent Plaintiff a notice informing her that it intended to deny Plaintiff's application.  CIS informed Plaintiff that because she did not establish that she entered the United States prior to January 1, 1982, she was not eligible for class membership under the LIFE Act, and thus, her status could not be adjusted to that of a lawful permanent resident.  At the conclusion of the November 2004 notice, CIS granted Plaintiff "thirty days to rebut [its] stated intention to deny [her] application."  (Def.'s Mot. Ex. A at 4.)  Plaintiff did not rebut CIS's stated intention, and her application was denied on December 28, 2004.  (*See* Def.'s Mot. Ex. B.)

Plaintiff later appealed the denial of her application to the Administrative Appeals Office ("AAO").  In a decision issued on January 23, 2008, the AAO dismissed Plaintiff's

appeal for the same reason her application for adjustment of status was denied initially: Plaintiff had not established that she entered "the United States before January 1, 1982 and continuous residence in the United States in an unlawful status since such date and through May 4, 1988." (Def.'s Mot. Ex. C at 3.)

Plaintiff filed this action on February 20, 2008. In her complaint, Plaintiff seeks a declaration "that Regulation 8 C.F.R. 245a.31(a) is ultra virus [*sic*] and does not reflect the congressional intent under § 1504 Family Unity Provision of [the] LIFE Act." (Compl. at p. 5.) In addition, Plaintiff requests that the Court "[a]pprove [her] petition for adjustment of status." (*Id.*)

## II.   Standard of Review

Defendant moves to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. "A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may involve a facial or a factual attack." *Am. Telecom. Co., LLC v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007)(citing *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2004)). When a movant mounts a facial attack on subject matter jurisdiction, the district court must "take the allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *United States v. A.D. Roe Co., Inc.*, 186 F.3d 717, 721-22 (6th Cir. 1999). On the other hand, when "a Rule 12(b)(1) motion attacks the factual basis for jurisdiction, the district court must weigh the evidence, and the plaintiff has the burden of proving that the court has jurisdiction over the subject matter." *Golden*, 410 F.3d at 881.

## III.   Analysis

## A.    Statutory Background

In 1986, Congress amended the Immigration and Naturalization Act, by enacting

what is known as the Immigration Reform Control Act ("IRCA") of 1986, to legalize

certain types of undocumented illegal aliens.  *Reno v. Catholic Soc. Servs.*, 509 U.S. 43,

46, 113 S. Ct. 2485, 2489-90 (1993).  Subsequently, three class action lawsuits

challenged the former Immigration and Naturalization Service's ("INS") regulations

implementing IRCA.  *See Catholic Social Servs., Inc. v. Mess*, *vacated sub nom. Reno v.*

*Catholic Soc. Servs., Inc.*, 509 U.S. 43, 113 S. Ct. 2485 (1993)("CSS"); *League of United*

*Latin Am. Citizens v. INS*, *vacated sub nom. Reno v. Catholic Soc. Servs., Inc.*, 509 U.S.

43, 113 S. Ct. 2485 (1993)("LULAC"); and *Zambrano v. INS*, *vacated*, 508 U.S. 918

(1993)("Zambrano").  As a result (at least in part) of these lawsuits, Congress enacted the

LIFE Act, Pub. L. 106-553, 114 Stat. 2762 (2000), and the LIFE Act Amendments, Pub.

L. 106-554, 114 Stat. 2763 (2000).

In a final rule issued by the former INS describing the LIFE Act and its

Amendments, the following "Supplementary Information" was provided:

> Section 1104 of the LIFE Act and its Amendments (LIFE
> Legalization) allow certain eligible aliens to apply for
> adjustment of status to that of a lawful permanent resident
> (LPR) under a modified version of section 245A of the
> Immigration and Nationality Act (Act) (8 U.S.C. § 1255a).
> Aliens who are eligible to apply for adjustment under LIFE
> Legalization are those who, before October 1, 2000, had filed
> with the Attorney General a written claim for class
> membership in the CSS, LULAC, or Zambrano legalization
> class action lawsuits. In order to qualify for adjustment, aliens
> must establish that they entered the United States before
> January 1, 1982, and thereafter resided in continuous unlawful
> status through May 4, 1988. Aliens also must establish that

they were continuously physically present in the United States
from November 6, 1986, through May 4, 1988. Furthermore,
aliens must demonstrate basic citizenship skills. Finally,
aliens must be otherwise admissible to the United States
under the Act. LIFE Legalization also provides for a stay of
removal or deportation and work authorization for eligible
aliens under this law while their adjustment applications are pending.

Section 1504 of the LIFE Act Amendments provides that the
Attorney General may not remove certain spouses and
children of aliens eligible to adjust under LIFE Legalization
and shall grant employment authorization to those eligible
spouses and children for the period of time in which they have
been afforded Family Unity protection. Aliens who might
benefit from the Family Unity provisions of the LIFE Act
Amendments are those who:

(1) Are currently in the United States;

(2) Are the spouse or unmarried child of an alien who is
eligible for adjustment under LIFE Legalization; and

(3) Entered the United States before December 1, 1988, and
were residing in the United States on such date.

Adjustment of Status Under Legal Immigration Family Equity (LIFE) Act Legalization

Provisions and LIFE Act Amendments Family Unity Provisions, 67 Fed. Reg. 38341,

38341 (June 4, 2002).

Based on IRCA, and unaffected by the LIFE Act and its Amendments, there is an

exclusive scheme for administrative and judicial review of decisions on applications for

adjustment of status. *See* 8 U.S.C. § 1255a(f)(1)("There shall be no administrative or

judicial review of a determination respecting an application for adjustment of status under

this section except in accordance with this subsection.") Administrative review of an

application for adjustment of status is limited to an initial administrative review and a

single level of administrative appellate review. *Id.* § 1255a(f)(3). With respect to judicial review, 8 U.S.C. § 1255a(f)(4)(A) provides:

> **(A) Limitation to review of deportation**
>
> There shall be judicial review of such a denial only in the judicial review of an order of deportation under section 1105a of this title (as in effect before October 1, 1996).

In *Reno v. Catholic Social Services*, 509 U.S. 43, 113 S. Ct. 2485 (1993), the Supreme Court described this administrative and judicial review scheme in the following manner:

> The Reform Act [IRCA] . . . provides an exclusive scheme for administrative and judicial review of "determinations respecting . . . applications for adjustment of status" . . . . Section 1255a(f)(4)(A) provides that a denial of adjustment of status is subject to review by a court "only in the judicial review of an order of deportation under [8 U.S.C. § 1105a]"; under § 1105a, this review takes place in the Courts of Appeals. Section 1255a(f)(1) closes the circle by explicitly rendering the scheme exclusive: "There shall be no administrative or judicial review of a determination respecting an application for adjustment of status under this section except in accordance with this subsection."

*Id.* at 53, 113 S. Ct. at 2493. Therefore, pursuant to 8 U.S.C. § 1255a(f)(4)(A), judicial review of a determination respecting an application for adjustment of status is limited to the denial of an order of deportation and such review takes place in the federal Courts of Appeals. *See id.*

## B. Application to Present Dispute

Plaintiff argues that 8 U.S.C. § 1255a(f)(4)(A) is "unclear about district court's jurisdiction and nature of that jurisdiction." (Pl.'s Resp. Br. at 10.) This Court disagrees with Plaintiff. As Defendant contends, the plain language of 8 U.S.C. § 1255a(f)

provides that "judicial review of a determination respecting an application for adjustment of status" is limited to review by the federal Courts of Appeals of an order of deportation. *See also Catholic Soc. Servs.,* 509 U.S. at 53, 113 S. Ct. at 2493.  Plaintiff's complaint requests that the Court issue an order approving her petition for adjustment of status. (Compl. at pg. 5.)  To grant Plaintiff the relief requested in her complaint, the Court would in essence be reviewing the denial of her application for adjustment of status, which would be contrary to the exclusive scheme set forth in 8 U.S.C. § 1255a(f). Consequently, this Court does not have subject matter jurisdiction to approve Plaintiff's application for adjustment of status, as requested in her complaint.

Plaintiff nevertheless argues that she is challenging the validity of 8 C.F.R. § 245a.31(a), and thus, this Court has jurisdiction to decide whether this regulation is consistent with congressional intent.  Plaintiff's attempt to frame her complaint as a challenge to the validity of 8 C.F.R. § 245a.31(a) fails for two reasons.  First, the Supreme Court in *Catholic Social Services* stated that a claimant who challenges the denial of her application for adjustment of status because a "regulation rendered [her] ineligible for legalization" is subject to the exclusive scheme for judicial review under 8 U.S.C. § 1255a(f).  Therefore, assuming 8 C.F.R. § 245a.31(a) were the reason that CIS denied Plaintiff's application for adjustment of status, the proper time and place to raise such an objection would be after CIS issues an order of deportation and in the Court of Appeals.  Consequently, this Court would not have jurisdiction to hear Plaintiff's challenge of the validity of 8 C.F.R. § 245a.31(a).

Second, Plaintiff's application for adjustment of status was not denied based on 8

C.F.R. § 245a.31(a).[1]  Contrary to Plaintiff's assumption, to qualify for adjustment of

status under 8 U.S.C. § 1255a, Plaintiff had to satisfy, independent of her then-husband,

the presence requirements in 8 U.S.C. § 1255a(a)(2)(A), which require entry into the

United States prior to January 1, 1982.  *See supra* footnote 1.  By her own admission,

Plaintiff did not enter the United States until January 31, 1986.  (Compl. ¶ 1.)  Therefore,

she cannot satisfy the presence requirements of 8 U.S.C. § 1255a(a)(2)(A).

Consequently, even if this Court had subject matter jurisdiction, Plaintiff's contention that

---

[1]This regulation set forth the eligibility requirements for Family Unity benefits
under § 1504 of the LIFE Act amendments.  (*See* Def.'s Ex. D (LIFE Act Amendments,
including § 1504).)  Title 8 C.F.R. § 245a.31 provides:

> An alien who is currently in the United States may obtain
> Family Unity benefits under section 1504 of the LIFE Act
> Amendments if he or she establishes that:
>
> (a) He or she is the spouse or unmarried child under the age of
> 21 of an eligible alien (as defined under 245a.10) at the time
> the alien's application for Family Unity benefits is
> adjudicated and thereafter;
>
> (b) He or she entered the United States before December 1,
> 1988, and resided in the United States on such date; and
>
> (c) If applying for Family Unity benefits on or after June 5,
> 2003, he or she is the spouse or unmarried child under the age
> of 21 of an alien who has filed a Form I-485 pursuant to this
> Subpart B.

The "Family Unity" benefits as provided for under § 1504 of the LIFE Act Amendments
do not give a qualifying "spouse or unmarried child" of an "eligible alien" a derivative
right to adjustment of status under the LIFE Act.  (*See* Def.'s Ex. D.)  Rather, 8 C.F.R. §
245a.31 merely implements the Family Unity provisions of § 1504 of the LIFE Act
Amendments, setting forth the particular circumstances that a "spouse or unmarried
child" of an "eligible alien" may avoid removal and obtain employment authorization.
(*See id.*)

the CIS unlawfully applied 8 C.F.R. § 245a.31(a) to deny her application of adjustment of status would not be well taken.

Accordingly,

**IT IS ORDERED** that Defendant's motion for dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is **GRANTED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Roger R. Rathi, Esq.
Derri T. Thomas, AUSA